IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATURALOCK SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14-cv-10113 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| BAXTER HEALTHCARE CORPORATION, ) | |
| a Delaware corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this action, Naturalock Solutions, LLC ("Naturalock"), invented an all-natural replacement for animal-derived Heparin, a prescription blood thinner. Naturalock has sued Baxter Healthcare Corporation ("Baxter") in connection with a December 2010 License and Development Agreement ("Agreement") pursuant to which, among other things, Baxter agreed to pursue patent protection for Naturalock's technology in exchange for exclusive licensing rights. To assist in carrying out its obligations under the Agreement, Baxter retained the law firm K&L Gates, LLP to prosecute the patents. During discovery in this case, Naturalock served a document request on Baxter seeking all documents between Baxter and K&L Gates relating to the prosecution of the patents. Baxter refused to produce the documents, claiming that they are protected from disclosure by the attorney-client privilege. Before the Court is Baxter's motion to compel production of the purportedly privileged documents ("Motion") (Dkt. No. 98). For the reasons stated below, the Motion is granted.

### BACKGROUND

In its First Amended Complaint, Naturalock alleges that Baxter agreed to test, develop, commercialize, and prosecute patent applications for Naturalock's proprietary technology in

exchange for an exclusive license to the technology. According to Naturalock, Baxter intentionally failed to follow through on its obligations, causing extensive delays for the project, and eventually abruptly terminated the Agreement. Naturalock claims that Baxter's conduct has prevented Naturalock from commercializing its product and has cleared the way for Baxter to pursue its own business plans. With this lawsuit, Naturalock seeks a declaratory judgment to determine the rights and duties of the parties under the Agreement. It also asserts common law claims for breach of contract, negligence, and tortious breach of contract and intentional interference with business relations.

During discovery, Naturalock served Baxter with a request for production seeking production of all documents between Baxter and K&L Gates relating to the prosecution of patents for Naturalock's technology. Baxter objected, refusing to produce the documents on privilege grounds. Consequently, Naturalock moved this Court to compel Baxter to produce the documents. In its motion, Naturalock argues that Baxter should not be permitted to assert the privilege to deny Naturalock access to the documents because Naturalock is actually K&L Gates's sole client with respect to the prosecution of the patents or, if it not K&L Gates's sole client, then Naturalock is a joint client along with Baxter. Baxter disagrees, asserting that it was K&L Gates's only client with respect to the prosecution of the patents.

The parties have submitted numerous exhibits that they claim support their respective positions as to whether Naturalock was a client of K&L Gates. For instance, Naturalock asserts that K&L gates sought "exclusive direction" from Naturalock regarding the filing of foreign patent applications. (Pl. Reply at 7, Dkt. No. 110.) Email correspondence among K&L Gates, Baxter, and Naturalock reflects K&L Gates's confirmation that it would file patent applications in foreign countries for Naturalock's technology per Naturalock's instructions. (Pl. Reply, Ex. B,

Dkt. No. 110-2.) In one portion of the exchange, Naturalock tells K&L Gates to "feel free to have the Baxter in house counsel weigh in on the subject." (*Id*. at 4.) Although Baxter was invited to provide input, the ultimate decision regarding where to file foreign applications was made by Naturalock, and Naturalock ultimately chose to file in a jurisdiction that was not recommended by Baxter's in-house counsel. (*Id*. at 1-4.) Other email correspondence shows K&L Gates providing a draft of a response to the U.S. Patent Office to Baxter and Naturalock for review and approval, and Naturalock requesting K&L Gates's advice regarding the likely outcome of the submission. (Pl. Reply, Ex. F, Dkt. No. 110-6.) Additional email correspondence reveals that K&L Gates could not move forward with a filing with the U.S. Patent Office without Naturalock's input. (Pl. Reply, Ex. G, Dkt. No. 110-7.)

On the other hand, Baxter argues that the Agreement reserved for it the obligation to retain and pay for counsel, the final decision on any prosecution matter, and the right to assert privilege over patent-related documents. (Def. Opp'n at 2, Dkt. No. 102.) Baxter also asserts that both Baxter and K&L Gates believed that Baxter alone was K&L Gates's client, and that during the course of the representation, Baxter and K&L Gates communicated without Naturalock "hundreds of times." (*Id*. at 2-3.) Baxter further claims that Naturalock had its own intellectual property counsel during the relevant time period, that both Baxter and K&L Gates referred to K&L Gates as Baxter's counsel in communications with Naturalock, and that Naturalock referred to K&L Gates as "Baxter outside counsel." (*Id*. at 3-4.)

**DISCUSSION**

Baxter, as the party seeking to withhold material from discovery, bears the burden of demonstrating that the attorney-client privilege applies and entitles it to withhold the disputed documents. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Naturalock

contends that Baxter cannot meet this burden because Naturalock, not Baxter, is K&L Gates's sole client with respect to the patent prosecutions at issue or, if nothing else, Naturalock is a joint client of K&L Gates along with Baxter. Given the extensive nature of Baxter's involvement in the patent prosecution, this Court does not find persuasive Naturalock's attempt to cast itself as K&L Gates's sole client. Thus, the question is whether Naturalock was a joint client along with Baxter.

Courts have long held that an attorney-client relationship exists among clients and attorneys allied in a common legal cause, such as the prosecution of a patent. *See, e.g.*, *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 226 (1st Cir. 2005).[1] "[P]arties engaged in prosecuting a patent application typically have a common interest in obtaining the greatest protection and exploiting the patent to the fullest degree, and the determination of the professional relationship does not turn on the payment of fees or the existence of a retainer agreement." *Beasley v. Avery Dennison Corp.*, No. SA-04-CV-0866FB(NN), 2006 WL 2854396, at *4 (W.D. Tex. Oct. 4, 2006). *See also Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 126 (D.D.C. 1998) (noting that typically parties jointly developing a patent with an attorney "develop a 'community of interest,' which establishes a joint attorney-client relationship among them and the attorney," and results in the parties being viewed as joint clients for purposes of the privilege).

---

[1] Baxter asserts that Delaware, not federal, law applies to this privilege dispute. Baxter does not, however, show that the privilege analysis would be different under Delaware and federal law. (*See* Def. Opp'n at 5-6.) In fact, Baxter itself cites federal law in support of its arguments. (*See, e.g.*, *id.* at 9 (citing *Boston Sci. Corp. v. Mirowski Family Ventures, LLC*, No. 1:11-CV-736-WTL-DKL, 2012 WL 1982114, at *1 (S.D. Ind. June 1, 2012)).) Nor has Baxter raised any argument that the application of regional circuit law rather than Federal Circuit law would lead to a different result. Baxter has thus waived any argument that the application of federal law as opposed to the law of any particular circuit would lead to a substantively different (and incorrect) result with respect to the privilege issue before the Court. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

Here, based on the record before the Court, it is clear that K&L Gates provided legal advice and services to Naturalock and acted at the direction of Naturalock in addition to Baxter. This is not a situation where there is no evidence of the nature of communications between the licensor and licensee's counsel. *See Boston Sci. Corp. v. Mirowski Family Ventures, LLC*, No. 1:11-CV-736-WTL-DKL, 2012 WL 1982114, at *6 (S.D. Ind. June 1, 2012). It does not matter what K&L Gates or Baxter perceived the relationship to be:

> [T]he issue is not who employed the attorney, but whether the attorney was acting in a professional relationship to the person asserting the privilege. The professional relationship for purposes of the privilege for attorney-client communications hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.

*Regents*, 101 F.3d at 1390 (internal quotation marks and citation omitted) (applying Seventh Circuit law to find that the legal interest between the licensor and the licensee's patent counsel "was substantially identical because of the potentially and ultimately exclusive nature of the [parties'] license agreement," and therefore "[b]oth parties had the same interest in obtaining strong and enforceable patents" even though the licensee's counsel testified that they considered the licensee, and not the licensor, to be their client).

Baxter focuses on the facts that Naturalock had separate counsel and that all of the parties involved referred to K&L Gates as Baxter's counsel. But those facts do not lead to the conclusion that K&L Gates's representation of Baxter was to the *exclusion* of Naturalock. Furthermore, Baxter does not contend that Naturalock was ever explicitly informed that K&L Gates represented only Baxter. To the contrary, the record makes clear that K&L Gates had a professional relationship with both Naturalock and Baxter, and that both Naturalock and Baxter manifested an intention to seek professional legal advice from K&L Gates. *See id.*; *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *2 (N.D. Ill. June 19, 1987) (finding that

consultants on whose behalf the plaintiff was obligated to pursue patents, with the potential to acquire an exclusive license to those inventions, shared a common legal interest with the plaintiff).

In sum, it appears that Naturalock and Baxter were joint clients of K&L Gates, and thus there is no basis for Baxter to assert the attorney-client privilege to deny Naturalock discovery regarding correspondence regarding the prosecution of patents for Naturalock's technology. This is true even if Naturalock is correct that Baxter, unbeknownst to Naturalock at the time, was actually acting in a manner that was adverse to Naturalock's interests and even if K&L Gates was complicit in Baxter's scheming. *See Mass. Eye & Ear Infirmary*, 412 F.3d at 226 ("The rules of discovery therefore do not insulate from discovery the communications of a duplicitous party who feigns common interest while scheming otherwise with a shared, trusted advisor.").

## CONCLUSION

For these reasons, Baxter has failed to meet its burden of establishing that the attorney-client privilege protects the disputed documents from production to Naturalock. Baxter's objection to production on that ground is therefore overruled and Naturalock's motion to compel (Dkt. No. 98) is GRANTED.

ENTERED:

Dated: May 20, 2016

_____
Andrea R. Wood
United States District Judge

6