IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATURALOCK SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cv-10113 |
| | ) | |
| BAXTER HEALTHCARE CORPORATION, | ) | Judge Andrea R. Wood |
| a Delaware corporation, | ) | |
| BAXTER INTERNATIONAL, INC., and | ) | |
| BAXTER HEALTHCARE S.A., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Naturalock Solutions, LLC ("Naturalock") and Defendant Baxter Healthcare Corporation ("Baxter")[1] entered into a license agreement relating to the commercialization of Naturalock's invention of s solution to replace or supplement certain prescription drug products manufactured by Baxter. Naturalock now alleges that Baxter engaged in a systematic scheme to block the development of its competing product. According to Naturalock, Baxter fraudulently procured the license agreement in an effort to prevent Naturalock from partnering with other manufacturers and then intentionally failed to fulfill its obligations under the agreement. Naturalock's amended complaint seeks a declaratory judgment regarding the parties' rights and duties under the license agreement and asserts common law claims for fraudulent inducement, breach of the license agreement, material breach of contract, negligence, and tortious interference. Before the Court is Baxter's motion to dismiss Naturalock's second (fraudulent inducement), fifth (negligence), and sixth (tortious interference) causes of action pursuant to Federal Rules of Civil

---
[1] The parties filed a stipulation voluntarily dismissing Defendants Baxter International, Inc. and Baxter Healthcare S.A. (Dkt. No. 26.)

Procedure 9(b) and 12(b)(6). (Dkt. No. 79.) For the reasons stated below, the motion is granted. Naturalock's three tort claims are dismissed without prejudice.

## BACKGROUND

According to the amended complaint,[2] Baxter develops, licenses, manufactures, and sells the prescription drug heparin, which is an anticoagulant, or blood thinner, that prevents blood clots. (Am. Compl. ¶¶ 5, 8, 14, Dkt. No. 77.) Heparin is derived from porcine (*i.e.*, pig) intestines and used primarily to decrease the chance of blood clots in patients undergoing surgery, to prevent the formation of clots in catheters, and to treat conditions such as pulmonary embolism. (*Id.* ¶¶ 9, 12.) Numerous problems have been associated with the use of heparin, including catheter-related, blood-stream infections. (*Id.* ¶ 21.) In response to the proven need for a safer product, Naturalock invented a unique, all-natural anticoagulant with bactericidal and anti-fungal properties to guard against infection, which is meant to replace the traditional animal-derived heparin. (*Id.* ¶¶ 20-23.)

In 2009, Naturalock entered into discussions with Baxter regarding the development and promotion of its invention. (*Id.* ¶ 24.) In 2010, the parties executed an exclusive global license agreement pursuant to which Baxter was to test, develop, and secure patent protection as well as FDA approval for Naturalock's product. (*Id.* ¶ 25.) Naturalock alleges that after signing the license agreement, Baxter intentionally delayed the project for approximately 30 months. (*Id.* ¶ 50.) First, Baxter failed to complete the technical feasibility studies on time. (*Id.* ¶ 26.) The studies were not completed until October 2011—four months after the original deadline. (*Id.*) In addition, Baxter failed to provide Naturalock with regular updates on the status of the project as

---

[2] For purposes of deciding this motion, the Court accepts as true all well-pleaded factual allegations set forth in the amended complaint and views them in the light most favorable to Naturalock. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

promised. (*Id.* ¶ 27.) In November 2011, Naturalock requested an update and was promised that the final formulation of its invention would be finished by the second quarter of 2012. (*Id.*) Then, in February 2012, Naturalock requested a detailed update on the status of the project, including information regarding production issues, clinical trials, patent status, and funding. (*Id.* ¶ 28.) In response, Baxter simply stated that the project was progressing as planned without providing any additional details. (*Id.*)

According to Naturalock, Baxter was also dilatory in the patent-prosecution process. (*Id.* ¶ 78.) Baxter assured Naturalock that the process was moving along as expected, but Naturalock later learned that, after receiving a non-final objection from the U.S. Patent and Trademark Office ("USPTO"), Baxter had simply resubmitted the applications without making any substantive modifications. (*Id.* ¶ 32.) Moreover, Baxter ignored Naturalock's request that certain test data and other supporting information be included in the submissions. (*Id.* ¶¶ 33, 39.) As a result, in September 2013, the USPTO issued a final rejection of the previous submissions and set a deadline of December 11, 2013 for the filing of a final revision request. (*Id.* ¶¶ 34-35.) In October 2013, Baxter informed Naturalock that a final draft of the patent submission would soon be ready for review. (*Id.* ¶ 34.) However, Naturalock did not receive the final draft until December 2, 2013—just over a week prior to the deadline. (*Id.* ¶ 35.) During a December 9, 2013 conference call to discuss the final submission, Baxter's patent counsel advised that the inclusion of certain test data, which Baxter had omitted from previous submissions, would be instrumental in supporting Naturalock's patent claims. (*Id.* ¶ 36.) Due to its delay, Baxter had no choice but to procure an extension of time from the USPTO. (*Id.*) Naturalock alleges that the prosecution of its patent application languished for many months thereafter. (*Id.* ¶ 38.)

In the meantime, Baxter had promised to provide Naturalock with a list of foreign countries where it intended to pursue patent protection. (*Id.*) The list was to be completed in sufficient time to allow Naturalock to provide input prior to the deadline for international filing. (*Id.* ¶ 38.) Naturalock's primary goal was to obtain patent protection in Middle Eastern countries with large Muslim populations, where an all-natural solution was likely to sell more successfully than the pig-based heparin already on the market. (*Id.* ¶ 42.) Despite the parties' understanding, Baxter did not provide a country list; nor did it notify Naturalock of international filing requirements or the filing deadline. (*Id.* ¶ 43.) When Naturalock followed up regarding the list, Baxter advised that the deadline had already passed. (*Id.*) Baxter had filed the applications without providing Naturalock an opportunity to review or comment and had elected not to file in the 79 countries that had been a focus of Naturalock's marketing research, including a number of Middle Eastern countries. (*Id.* ¶¶ 43, 46.)

In March 2014, shortly after learning that the international filing deadline had passed, Naturalock raised concerns regarding Baxter's delays, misrepresentations, and failures in performing its obligations under the license agreement. (*Id.* ¶ 47.) Baxter responded by giving notice of its election to terminate the agreement. (*Id.* ¶¶ 47, 49.) According to Naturalock, Baxter's explanation for the termination—that the project was not commercially feasible—was inconsistent with its representations, made in February 2014, that despite the delays, the project was still on track for completion that year. (*Id.* ¶¶ 49-51.) Naturalock alleges that the termination was in direct retaliation for its identification of Baxter's potential breaches of the license agreement. (*Id.* ¶ 98.) After receiving notice of the termination, Naturalock requested that Baxter turn over all test data and materials so that it could attempt to pursue patent prosecution, FDA

4

approval, and commercialization on its own. (*Id.* ¶ 53.) Despite its data transfer obligations under the license agreement, Baxter refused to provide the necessary materials. (*Id.* ¶¶ 53-54.)

Naturalock claims that Baxter's intention all along was to block the development of its invention in order to maintain its nearly 50 % share of the heparin market. (*Id.* ¶¶ 16, 99.) Naturalock alleges that Baxter, through misrepresentation of its intent to pursue in good faith the commercialization of its invention, fraudulently induced Naturalock to enter into the license agreement in an effort to prevent it from partnering with other manufacturers. (*Id.* ¶¶ 68, 102.) Naturalock further alleges that Baxter intentionally delayed, and failed to exercise due diligence in connection with, the patent application process in a systematic scheme to cause its failure. (*Id.* ¶ 37.) According to Naturalock, as a result of Baxter's intentional delay and lack of communication with respect to the filing of foreign patent applications, it has forever lost the ability to protect its invention in the countries that were a focus of its marketing research. (*Id.* ¶ 46.) Finally, Naturalock alleges that Baxter's refusal to turn over the test data and other materials is just another attempt to prevent the timely commercialization of its invention. (*Id.* ¶ 54.) Naturalock claims that Baxter's conduct will prevent it from commercializing its product for a significant period of time, thereby ensuring that it will not interfere with Baxter's current business plans. (*Id.* ¶ 56.)

Naturalock's amended complaint sets forth six causes of action. The first is a declaratory judgment action seeking a determination of the parties' rights and responsibilities under the license agreement, specifically with respect to the test data required for the continued prosecution of Naturalock's patent application before the USPTO. Second, Naturalock claims that Baxter committed fraud in the inducement in connection with the negotiation and execution of the license agreement. Naturalock's third and fourth causes of action are for breach of the license agreement

and material breach of contract, respectively. In its fifth claim, Naturalock alleges that Baxter was negligent in pursuing its patent application, in obtaining patent protection in foreign countries, and in commercializing its invention. Finally, Naturalock purports to state a claim for tortious breach of agreement and intentional interference with business relations, alleging that Baxter entered into the license agreement to prevent Naturalock from partnering with other manufacturers. With the present motion, Baxter seeks to dismiss Naturalock's second, fifth, and sixth causes of action.[3]

## DISCUSSION

### I. Choice of Law

As an initial matter, the Court must determine which state's substantive law governs Naturalock's common law tort claims. The license agreement between the parties includes a choice-of-law provision, which states:

> This Agreement will in all events and for all purposes be deemed to have been executed in, and shall be governed by, and construed according to, the laws of the State of Delaware, applicable to contracts made and to be performed in that State[.]

(Pl. Resp. to Mot. to Dismiss at 8, Dkt. No. 84.) In light of that provision, Naturalock's response brief cites only Delaware law. Baxter, on the other hand, relies on Illinois law but also asserts that, to the extent conflict-of-law principles dictate that Delaware law applies, Delaware law is substantially the same as Illinois law with respect to Naturalock's tort claims.[4]

---

[3] Naturalock argues that Baxter has waived the right to bring this motion to dismiss. According to Naturalock, none of the amendments to the complaint justify allowing Baxter to raise defenses which could have been raised at the time Baxter filed its answer to the original complaint. However, failure to state a claim is not a defense subject to waiver under the applicable Federal Rules of Civil Procedure. *See Ennenga v. Starns*, 677 F.3d 766, 772-73 (7th Cir. 2012). Moreover, those Rules are intended to prevent defendants from bringing successive motions to dismiss on various grounds. That is not what Baxter has done here. There is no reason that the intervening filing of an amended complaint should prevent Baxter from moving for dismissal pursuant to Rule 12(b)(6).

[4] Because of their differing views, the Court ordered the parties to file supplemental briefs specifically addressing choice-of-law issues—specifically, which jurisdiction's choice-of-law rules apply, which

A federal court exercising its diversity jurisdiction generally must apply the choice-of-law rules of the state in which it sits. *See, e.g., Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). However, because this lawsuit was transferred to this District from the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a), Oklahoma's choice-of-law rules apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (where a defendant seeks a change of venue under § 1404(a), the transferee district court must apply the state law that would have been applied if there had been no change of venue); *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) (the same rule applies when a plaintiff moves to transfer); *Edwardsville Nat'l Bank & Tr. Co. v. Marion Labs., Inc.,* 808 F.2d 648, 650 (7th Cir.1987) ("A transfer under § 1404(a) changes venue but not law; the transferee court must apply the transferor's choice-of-law rules.").

In tort cases such as this one, Oklahoma courts apply the substantive law of the state with "the most significant relationship to the occurrence and the parties." *Hambelton v. Canal Ins. Co.*, 405 F. App'x 335, 337 (10th Cir. 2010) (quoting *Hightower v. Kan. City S. Ry. Co.,* 70 P.3d 835, 842 (Okla. 2003)). Or rather, Oklahoma courts would apply the most significant relationship test in the absence of a valid choice-of-law provision requiring the application of another state's law. Thus, before proceeding, this Court first must determine whether the choice-of-law provision in the parties' license agreement covers Naturalock's tort claims; if it does, there is no need to go through the most significant relationship analysis. In a diversity case, the federal district court looks to the forum state (here again, Oklahoma) to determine how its conflict-of-law principles treat choice-of-law clauses in contracts. *See, e.g., DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 330 (7th Cir. 1987). In other words, this Court must honor the license agreement's choice-of-law provision if Oklahoma courts would do so. *See Agfa-Gevaert, A.G. v.*

---

state's substantive law governs the claims, and whether applicable law dictates that the choice-of-law provision in the license agreement covers Naturalock's tort claims.

*A.B. Dick Co.*, 879 F.2d 1518, 1520 (7th Cir. 1989). Because Oklahoma courts generally enforce choice-of-law provisions—and because the parties do not dispute, at least at this stage, the provision's validity—the Court will consider it valid and enforceable. *See, e.g., Empire Bank v. Dumond*, 28 F. Supp. 3d 1179, 1184 (N.D. Okla. 2014) (citing *Fossil Creek Energy Corp. v. Cook's Oilfield Servs.*, 242 P.3d 537, 541-42) (Okla. Civ. App. 2010)); *Pre-Paid Legal Servs., Inc. v. Cahill*, No. 12-CV-346-JHP, 2016 WL 1056571, at *5 (E.D. Okla. Mar. 16, 2016) (Oklahoma will enforce a choice-of-law provision when it is clear and unambiguous) (citing *Fossil Creek*, 242 P.3d at 542).

Enforceability is not the same as scope, however. That the license agreement's choice of Delaware law to govern the **contract** between the parties is enforceable under Oklahoma choice-of-law rules does not necessarily mean that the choice-of-law provision is broad enough to cover Naturalock's **tort** claims as well. The parties, relying on Oklahoma law, agree that the choice-of-law provision is limited in scope and does not require the application of Delaware law to the claims at issue here. And that does appear to be the correct conclusion under Oklahoma law. *See, e.g., Hawk Enters., Inc. v. Cash Am. Int'l, Inc.*, 282 P.3d 786, 790 (Okla. Civ. App. 2012) (choice-of-law provision in franchise agreement was not broad enough to include plaintiff's claim for tortious interference); *Pine Tel. Co., Inc. v. Alcatel Lucent USA Inc.*, 617 F. App'x 846, 852-53 (10th Cir. 2015) (choice-of-law provision governed contract and warranty claims but, because fraud claims did not arise out of the agreement, the forum state's—Oklahoma's—choice-of-law principles determined which law governed those claims). *Cf. Tribal Consortium, Inc. v. Pierson*, No. CIV-06-238-D, 2009 WL 5194374, at *6 (W.D. Okla. Dec. 28, 2009) (participation agreement's choice-of-law provision applied to plaintiff's fraud claims because those claims were

based on alleged misrepresentations of the exclusive nature of the agreement and thus required interpretation of the agreement). But as recognized by the Second Circuit:

> Determining which jurisdiction's law governs the scope of a valid choice-of-law clause is not a simple matter. On the one hand, once a court finds that a contractual choice-of-law clause is valid, the law selected in the clause dictates how the contract's provisions should be interpreted, and so arguably that law should also dictate how the choice-of-law clause—which is itself one of the contract's provisions—should be interpreted. More commonly, however, courts consider the scope of a contractual choice-of-law clause to be a threshold question like the clause's validity. Courts therefore determine a choice-of-law clause's scope under the same law that governs the clause's validity—the law of the forum.

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332-33 (2d Cir. 2005) (internal citation omitted). The Seventh Circuit similarly has held that, "while the choice of law provision may govern the interpretation of the contract, its legal effect and unrelated questions of tort law may nevertheless be governed by the law of the forum state, depending upon its choice of law rules." *Kessinger v. Grefco, Inc*., 875 F.2d 153, 155 (7th Cir. 1989).

While it appears that the parties are correct to assume that Oklahoma's choice-of-law rules determine whether the selection of Delaware law extends to Naturalock's tort claims, as a practical matter the outcome is likely the same if Delaware law dictates the scope of the choice-of-law provision as if Oklahoma law applies. As explained in *VSI Sales, LLC v. International Fidelity Insurance Co.*, No. CV 15-507-GMS, 2015 WL 5568623 (D. Del. Sept. 22, 2015):

> Before applying a choice-of-law provision to a claim, Delaware courts examine whether the contracting parties drafted the provision broadly or narrowly. Courts have held that choice-of-law provisions that explicitly apply to "any claim arising out of or relating to" a contract are broad enough to cover quasi-contract and tort claims arising from contractual agreements. Courts have held that narrow choice-of-law provisions that do not include such expansive language apply only to claims directly arising from the contracts themselves.

*Id.* at *3 (internal citations omitted).[5] Unlike broader clauses that expressly extend to any and all claims arising out of the agreement, the clause here states only that the agreement is to be governed by and construed according to Delaware contract law. *See, e.g., Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*, 319 F. App'x 137, 141 (3d Cir. 2009) (choice-of-law provision stating that it was to be governed by and construed in accordance with Delaware law was by its express terms limited to claims arising from the agreement and thus did not apply to quasi-contract claims). Given its narrow language, the Court finds that—regardless of whether Oklahoma or Delaware law applies to this particular issue—the choice-of-law provision in the license agreement does not cover Naturalock's fraudulent inducement, negligence, and tortious interference claims. *See, e.g., Kuehn v. Childrens Hosp., L.A.*, 119 F.3d 1296, 1302 (7th Cir. 1997) (choice-of-law provisions will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended) (citing Second and Fifth Circuit cases).

Therefore, the law applicable to the tort claims at issue here is that of the state with the most significant relationship to the occurrence and the parties. To determine which state's relationship is most significant, Oklahoma courts consider the following factors: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) each party's domicile, residence, nationality, place of incorporation, and place of business; and (4) where the relationship between the parties occurred." *Hambelton*, 405 F. App'x at 337 (citing *Brickner v. Gooden,* 525 P.2d 632, 637 (Okla. 1974)). Where a tort action involves allegations of false representations, Oklahoma courts look to the factors set forth in § 148 of the Restatement

---

[5] *But see Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship. To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims . . . would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid.").

(Second) of Conflict of Laws. *See Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 626 (Okla. 2003).[6] In their supplemental briefs, the parties both conclude that an analysis of those factors requires the application of Illinois law to each of Naturalock's tort claims. While a number of the factors point to both Illinois and Oklahoma, the parties agree that, overall, Illinois is the state with the most significant relationship to the dispute. The Western District of Oklahoma court that first considered this case reached a similar conclusion (although in the context of venue, not choice of law), noting that "the events giving rise to this lawsuit took place almost exclusively in the Chicago area and the facts giving rise to the suit have little significant relation to Oklahoma, although the injuries . . . occurred in Oklahoma." (Order Granting Baxter's Mot. to Transfer at 3, Dkt. No. 38.) This Court agrees and thus concludes that Illinois law applies.

## II. Pleading Standards

While the substantive law of Illinois dictates the elements Naturalock must plead to establish its claims, this Court looks to federal pleading standards to determine the sufficiency of the amended complaint. *See Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2002 WL 774185, at *2 (N.D. Ill. Apr. 26, 2002) (citing *Charter Oak Fire Ins. Co. v. Hedeen*, 280 F.3d 730, 735 (7th Cir. 2002)). Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the

---

[6] Those factors are: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) of Conflict of Laws § 148 (1971).

11

defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III. Second Cause of Action – Fraudulent Inducement

The elements of a fraudulent inducement claim under Illinois law are: (1) a false statement of material fact that is known or believed to be false by the person making it, (2) an intent to induce the other party to act, (3) action by the other party in reliance on the truth of the statement, and (4) damage to the other party resulting from such reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

Naturalock here alleges that Baxter misrepresented its intent to pursue in good faith the patent process and the commercialization of its invention and that Baxter knew or had reason to know that those representations were false or intentionally deceiving. Naturalock further alleges that, as intended by Baxter, it relied upon the alleged misrepresentations in entering into the license agreement and has been damaged as a result. At first glance, those allegations appear sufficient to survive a motion to dismiss. However, "[a]s a general rule in Illinois, a promise to perform a future act, even though made without present intention to perform, is insufficient to constitute fraud." *Johnson Prods. Co., Inc. v. Guardsmark, Inc.*, No. 97 C 6406, 1998 WL 102687, at *6 (N.D. Ill. Feb. 27, 1998) (quoting *Int'l Meat Co., Inc. v. Bockos*, 510 N.E.2d 1013, 1016 (Ill. App. Ct. 1987)); *see also Warrentech Auto., Inc. v. Heritage Warranty Ins. Risk*

12

*Retention Grp., Inc.*, Nos. 07 C 3539, 07 C 6977, 2008 WL 4876936, at *6 (N.D. Ill. Aug. 12, 2008) (under Illinois law, misrepresentations of the intent to perform future conduct are not actionable as fraud). This rule guards against the risk of turning every breach of contract suit into a fraud suit and thereby thwarting the rule that denies the award of punitive damages for breach of contract. *See Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995).

An exception to the general rule exists "where the false promise or representation of intention or of future conduct is the scheme or device to accomplish the fraud." *Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985) (quoting *Roda v. Berko*, 81 N.E.2d 912, 915 (Ill. 1948)). In other words, "Illinois does not provide a remedy for fraudulent promises ('promissory fraud')—unless they are part of a 'scheme' to defraud." *Desnick*, 44 F.3d at 1354. It is widely recognized that "[t]he distinction between a mere promissory fraud and a scheme of promissory fraud is elusive, and has caused, to say the least, considerable uncertainty[.]" *Id.*; *see also Hollymatic*, 620 F. Supp. at 1369 ("The question we must decide is whether the general rule or the exception controls the instant case. The Illinois cases are not easily reconciled and the Illinois courts have rarely made more than half-hearted attempts to do so."). The Seventh Circuit has provided the following guidance:

> Our best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

*Desnick*, 44 F.3d at 1354. The parties' briefs do not address the "scheme or device" exception. Naturalock, relying solely on Delaware law, simply argues that there is a difference between breaching a contract once formed and fraudulently inducing a party to enter into a contract to that party's detriment with full knowledge that there was never any intent to perform. Is that sufficient

to state a claim for fraud under Illinois's scheme or device exception? This Court concludes that it is not.

Some courts have found a scheme properly alleged where the plaintiff pleaded facts to show that the defendant simply made a promise with no intention of performing it. *See Hollymatic*, 620 F. Supp. at 1369 (citing cases)*; see also Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) ("The scheme exception applies where a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment.") (internal quotation marks omitted). However, a plaintiff alleging a scheme or device must be able to point to specific, objective manifestations of fraudulent intent. *See Hollymatic*, 620 F. Supp. at 1369; *see also Bower*, 978 F.2d at 1012. Naturalock does not meet this deliberately high burden, as the amended complaint contains no facts that suggest Baxter never intended to perform its obligations under the license agreement. Instead, Naturalock alleges only that Baxter failed to perform and then terminated the agreement, without pleading any facts to show that Baxter's conduct was motivated by fraud as opposed to commercial or other reasons. *See Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001) ("Objective proof of fraudulent intent is required because the mere failure to keep a promise could be caused by any number of motivations besides fraud."). Naturalock's allegations of delay and failure to communicate are just more detailed allegations of non-performance; they do not support the conclusion that Baxter never intended to perform in the first place.

In sum, Naturalock has failed to provide any support for its conclusory allegation that Baxter fraudulently induced it into entering into the license agreement to prevent it from partnering with other manufacturers or commercializing the invention itself. And that conclusory

14

allegation, standing alone, is insufficient to state a claim for fraudulent inducement under Illinois law. *See Zic*, 130 F. Supp. 2d at 995-96 (dismissing plaintiff's fraud claims where he had not pleaded any specific objective proof of fraudulent intent, only conclusory allegations.); *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) ("Illinois law does not allow [] plaintiffs to proceed on a fraud claim when the evidence of intent to defraud consists of nothing more than unfulfilled promises and allegations made in hindsight."). Moreover, "[i]nitial compliance with a promise is contrary to the existence of fraudulent intent." *Sa'Buttar Health & Med., P.C. v. Tap Pharm., Inc.*, No. 03 C 4074, 2004 WL 1510023, at *4 (N.D. Ill. July 2, 2004). The amended complaint clearly indicates that Baxter initially complied with, or at least attempted to comply with, its obligations under the license agreement. Baxter took a number of steps down the path to commercialization of Naturalock's heparin product, including the completion of studies and testing, multiple submissions to the USPTO, and the filing of foreign patent applications. Those specific factual allegations undercut the amended complaint's conclusory allegations of fraud. Accordingly, Naturalock's fraudulent inducement claim must be dismissed.[7]

---

[7] Baxter contends that Naturalock's fraudulent inducement claim should be dismissed for the additional reason that it fails to meet Rule 9(b)'s heightened pleading standard. While not a basis for the Court's decision, it is clear that the amended complaint does not contain the "who, what, when, where, and how" of the alleged fraud. Naturalock asserts that it is not required to plead precise dates and times and that the complaint adequately identifies the alleged misrepresentations and the time frames in which they were made. It does not. Nowhere in the amended complaint does Naturalock describe the content—or even the general gist—of the alleged misrepresentations; nor does it provide approximate date ranges. Moreover, Naturalock does not identify, even in general terms, who made the allegedly false statements. In its response brief, Naturalock suggests that the heightened pleading standard should be relaxed because those details are exclusively within Baxter's knowledge. That simply cannot be the case. If Naturalock was induced to rely on statements made by Baxter representatives, it should have at least some idea of what was said and who said it. Naturalock also asserts that its written discovery responses set forth in great detail the "who, what, when, *etc.*" Even if true, that is immaterial—those details are not in the complaint, and it is the complaint that must meet the requirements of Rule 9(b). Moreover, as noted by Baxter, the argument that Rule 9(b)'s heightened pleading standard should be relaxed because Naturalock does not

## IV. Fifth Cause of Action - Negligence

To state a claim for negligence under Illinois law, a plaintiff must establish that the defendant owed him a duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007). Naturalock alleges that Baxter owed it a duty to timely pursue patent prosecution, FDA approval, and the commercialization of its invention, and to protect its invention in foreign countries. Naturalock further alleges that Baxter breached those duties and that it has been damaged as a result. Baxter argues that Naturalock's negligence claim—which it characterizes as nothing more than a recast breach of contract claim—should be dismissed as barred by the economic loss doctrine. The Court agrees.

The economic loss doctrine (known in Illinois as the *Moorman* doctrine) "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. 1982)). In other words, "when a contract sets out the duties between the parties, recovery should be limited to contract damages[.]" *R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002). However, where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that extra-contractual duty. *Wigod*, 673 F.3d at 567. Therefore, to determine whether the doctrine bars Naturalock's negligence claim, the key question is whether Baxter's duties arose by operation of the license agreement or existed independent of the agreement. *See id.*

That is not a difficult question to answer here. Each of the duties alleged by Naturalock is clearly rooted in the parties' license agreement. Indeed, the "duties" set forth in Naturalock's

---

have the required information is contradictory to the assertion that the information is provided in its interrogatory responses.

negligence claim are the same as the "obligations" upon which Naturalock bases its breach of contract claims. Because Naturalock has failed to allege any extra-contractual duty breached by Baxter, its negligence claim is barred. In an attempt to save its claim, Naturalock points to two exceptions to the economic loss doctrine recognized by Delaware courts. Because those exceptions also exist under Illinois law, the Court will address each in turn.[8] First, Naturalock asserts that it can maintain a cause of action for negligence if it is able to show that Baxter supplied it with false information for use in business transactions and that Baxter is in the business of supplying such information. According to Naturalock, its allegation that Baxter has refused to turn over certain test data supports a finding that the "supplying information" exception applies. That argument is simply untenable. How can Baxter's alleged withholding of information support a theory that it supplied false information? For use in what business transactions? And nowhere does Naturalock even hint that Baxter is "in the business of supplying information."

Second, Naturalock asserts that fraudulent inducement is a recognized exception to the economic loss doctrine and that the exception applies "to [its] fraudulent inducement claim." (Pl. Resp. to Mot. to Dismiss at 13, Dkt. No. 84.) Naturalock fails to explain how an exception for fraud might be relevant to its negligence claim. And Naturalock's separate fraudulent inducement claim has been dismissed for the reasons discussed above, which are unrelated to the economic loss doctrine and its exceptions. As a last ditch effort, Naturalock contends that, at least in Delaware, decisions regarding the applicability of exceptions to the economic loss doctrine are

---

[8] Illinois law recognizes three general exceptions to the *Moorman* doctrine: (1) where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages were proximately caused by the defendant's intentional, false representation(s), *i.e.,* fraud; and (3) where the plaintiff's damages were proximately caused by a negligent misrepresentation made by a defendant in the business of supplying information for the guidance of others in their business transactions. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333-34 (Ill. 2006)).

typically made at the summary judgment stage. That may be true where a plaintiff's allegations plausibly suggest that an exception applies. Here, the amended complaint is completely devoid of any allegations that might bring Naturalock's negligence claim within the supplying information exception. And nothing uncovered in the course of discovery will change the fact that an exception for fraud cannot work to save a negligence claim. Naturalock's negligence claim is essentially an attempt to recover tort damages for negligent breach of contract, which is exactly what the economic loss doctrine prohibits. Naturalock's fifth cause of action is therefore dismissed.

### V. Sixth Cause of Action – Tortious Interference[9]

"Under Illinois law, the elements of a claim for tortious interference with business expectancy are: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference." *Am. Audio Visual Co. v. Rouillard*, No. 07 C 4948, 2010 WL 914970, at *2 (N.D. Ill. Mar. 9, 2010). Naturalock alleges that Baxter, aware that it had been negotiating with other partners and manufacturers, procured the license agreement to intentionally interfere with and prevent Naturalock from obtaining future support for its invention.

---

[9] In the amended complaint, Naturalock's sixth cause of action is titled "[t]ortious breach of agreement and intentional interference with [] business relations." (Am. Compl. at 22, Dkt. No. 77.) Naturalock's response brief states that it has sufficiently pleaded a cause of action for tortious interference with prospective business relations. While the brief lists the elements of that cause of action, Naturalock goes on to assert that it has sufficiently pleaded a cause of action for "intentional interference with contractual relations." (Pl. Resp. to Mot. to Dismiss at 13, Dkt. No. 84.) To the extent Naturalock attempts to state a claim for tortious interference or intentional interference with contract, that attempt fails. Naturalock has failed to show the existence of any agreement between it and a third party with which Baxter interfered, and "[a] party may not be charged with tortious interference with respect to its own contract." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). The Court thus assumes that this is a claim for tortious interference with prospective business relations.

Naturalock further alleges that Baxter's conduct has prevented it from pursuing other manufacturers in partnerships or licensing agreements.

However, to state a claim for tortious interference, the alleged interference must be a result of conduct directed by the defendant toward a third party. *See Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *2 (N.D. Ill. Nov. 12, 2002) ("[T]here is a long line of cases—both from the Illinois appellate courts and from federal courts within this district—explaining that the element of interference requires more than mere allegations of conduct between the plaintiff and defendant."). Naturalock's amended complaint contains no allegations of conduct by Baxter directed toward any third party. Indeed, the only interference identified is Baxter's conduct in obtaining the license agreement. Naturalock's response brief puts a different spin on the claim, asserting that Baxter, in an effort to keep Naturalock from working with other partners or marketing its product to competitors, continues to withhold valuable information. Again, the alleged conduct is plainly directed toward Naturalock and not toward any third parties. For that reason, Naturalock's tortious interference claim fails along with its other tort claims.

## CONCLUSION

For the reasons stated above, Baxter's motion to dismiss (Dkt. No. 79) is granted and Naturalock's second, fifth, and sixth causes of action are dismissed without prejudice. Naturalock is granted leave to file a second amended complaint that cures the deficiencies detailed in this opinion, if it is able to do so consistent with the requirements of Federal Rule of Civil Procedure 11, by October 18, 2016.[10]

ENTERED:

Dated: October 4, 2016

_____

Andrea R. Wood
United States District Judge

---

[10] Baxter argues that Naturalock should not be granted leave to amend because it waited until the deadline for amendments to file its amended complaint. In support, Baxter cites *Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011), in which the Seventh Circuit held that the district court did not abuse its discretion in denying the plaintiff's motion for leave to amend his complaint, which was filed on the last day for filing a response to the defendants' motion to dismiss, and more than eight months after the deadline for filing amended pleadings. Here, Naturalock moved for leave to amend on the deadline for doing so, and then responded to Baxter's motion to dismiss in a timely fashion. The Court does not view that as a lack of diligence and thus sees no reason to deny Naturalock the opportunity to amend its complaint at this point.